IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


CRYSTAL D. DAVIS,

    Plaintiff,

v.               Civil Action No. 3:05-CV-51

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

## REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I. Introduction

A. <u>Background</u>

 Plaintiff, Crystal D. Davis, (Claimant), filed her Complaint on June 3, 2005, seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1]  Commissioner filed her Answer on July 28, 2005.[2]  Claimant filed her Motion for Summary Judgment and Memorandum  in Support on August 26, 2005.[3]  Commissioner filed her Motion for Summary Judgment and Brief in Support on October 24, 2005.[4]

B. <u>The Pleadings</u>

   1. <u>Claimant's Motion for Summary Judgment and Memorandum in Support</u>.

---

[1] Docket No. 1.

[2] Docket No. 6.

[3] Docket Nos. 8 and 9.

[4] Docket No. 12.

2.   <u>Commissioner's Motion for Summary Judgment and Brief in Support</u>.

C.   <u>Recommendation</u>

I recommend that Claimant's Motion for Summary Judgment be DENIED and that the Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was substantially justified in his decision. Specifically, the ALJ (1) properly evaluated and gave appropriate weight to Claimant's treating physician's opinion; and (2) conducted a proper credibility analysis.

## II. Facts

A.   <u>Procedural History</u>

On November 25, 2003, Claimant filed for Disability Insurance Benefits (DIB) alleging disability since December 19, 2000. The application was denied initially and on reconsideration. A hearing was held on November 5, 2004 before an ALJ. The ALJ's decision, December 27, 2004, denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on April 21, 2005. This action was filed and proceeded as set forth above.

B.   <u>Personal History</u>

Claimant was 44 years old on the date of the November 5, 2004 hearing before the ALJ. Claimant has a high school education and past relevant work experience as a sandwich maker, deli worker and stock clerk/cashier.

C.   <u>Medical History</u>

The following medical history is relevant to the time period during which the ALJ concluded that Claimant was not under a disability: December 19, 2000- December27, 2004. **<u>Stonewall Jackson Memorial Hospital, 2/2/01, Tr. 100-110</u>**

Diagnosis: left knee DJD and patella femoral symptoms.

**Mountainstate Orthopedic Associates, Inc., 2/6/01, Tr. 111-113**
Arthritis of the knee.

**Physical Residual Functional Capacity Assessment, 12/3/03, Tr. 114-121**
Exertional limitations: None established.

Postural limitations: None established.

Manipulative limitations: None established.

Visual limitations:  None established.

Communicative limitations: None established.

Environmental limitations: None established.

**Upshur Medical Management Services, Inc., 5/7/04, Tr. 123**
Arthritis of the knee.

**Dr. Galey, 11/27/00, Tr. 125**
Diagnosis: OA left knee.

**Dr. Galey, 10/27/00, Tr. 126**
Diagnosis: OA left knee.  X-rays today weightwearing view shows complete loss of the medial joint space.  There is some patellofemoral arthritis as well.

**United Hospital Center, 10/31/00, Tr. 127**
Impression: Degenerative joint disease, left knee.

**Physical Residual Functional Capacity Assessment, 3/1/04, Tr. 128-135**
Exertional limitations: Occasionally 20 lbs., frequently 10 lbs., sit 6 of 8 hours, unlimited push and pull.

Postural limitations: Occasionally in all categories.

Manipulative limitations: None established.

Visual limitations:  None established.

Communicative limitations: None established.

Environmental limitations:

Extreme cold, extreme heat, wetness, humidity, vibration, hazards–avoid concentrated exposure. Noise, fumes–unlimited.

**Dr. Joseph Snead, 5/4/04, Tr. 127**
Osteoarthritis.

**St. Joseph's Hospital, 2/6/04, Tr. 138**
Impression: Osteoarthritis involving the lateral compartment of left knee joint.

D.     <u>Testimonial Evidence</u>

<u>1. Claimant</u>

Testimony was taken at the hearing from Claimant, who testified as follows

(Tr. 167-214):

Q     Can you walk for, you know, 15 minutes at a time on level ground?

A     No.

*        *        *

Q     Okay.  The pain that you have in your knee how - - you have it all the time or part of the time?

A     It hurts all the time.

*        *        *

Q     Do you - - are you able to do - - I guess you're able to shop.

A     What do you mean - - well, I mean I go do the grocery shopping.

Q     Right.

A     But as far - -

Q     Right.

A     - - as just going out leisurely shopping and stuff like that I don't do it.

Q     And why not?

A    Because I can't, it hurts.  I mean I can make one trip and then I'm ready to go home.  It's all I can do to get back to the car without, you know, the pain is just so intense.

*                    *                    *

Q    Anything else you want to tell me about your condition or why you're not able to work?

A    No, I just, it's just the pain is just - - I don't know, there's days if I had a knife I'd cut my leg off.  See, it hurts that bad.  It's just hard to describe the pain.

Q    You want to see - - you haven't been back to the doctor because, as I understand it, the doctors told you, well, you know, we can't do anything to you - - for you until you get to be 50.

A    Yes.

*                    *                    *

EXAMINATION OF CLAIMANT BY ATTORNEY:

Q    It's my understanding, Ms. Davis, due to the condition of your knee you don't really have to be doing anything for it to start swelling and hurting, isn't that correct?

A    Correct.

Q    As you're seated here today we might think that you're in pretty good shape because you're not exerting anything.  Is your knee bothering you right now?

A    Not right at this minute.  When I get up it would.


## 2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr.

214-223):

Q     For the claimant's past relevant work, work that she's done at least long enough to learn how to do the job and it's significant gainful activity levels, would you identify the job from a standpoint of how it's characterized in the Dictionary of Occupational Titles, the skill level, and the exertional level. And if she was doing it different then how it's customarily done in the national economy if you would tell us how it's customarily done in the national economy.

A     Yes, Your Honor. Her most recent job was a sandwich maker at Subway and the DOT classifies a sandwich maker as medium, unskilled work. However, as she performed it she indicated she wasn't lifting more than 20 pounds. I would say she performed it at the light level. The same, the deli worker at the Dairy Mart, this is classified as light, unskilled work. The Good Hope convenience which her and her husband operated this would be classified as medium, low semi-skilled with an SVP of three. Similar with the Jane Lou convenience store, the same thing, Your Honor.

Q     Medium?

A     Medium, semi-skilled. Typically, I mean most of these clerk cashiers perform light work but they're occasionally required, as she indicated, to stock cases of gallons of milk, things of that nature which would get into about 30, 35 pounds lifting.

Q     All right. So the latest job was the first job you gave me, the Subway job?

A     Yes, Your Honor.

Q     And that was unskilled and light - -

A     Yes.

Q     - - as she performed it?

A        As she performed it, yes.

Q        And customarily that's at medium - -

A        Yes.

Q        - - is that what you said?

A        Yes.

Q        And then the rest of the jobs were at the Dairy Mart and those were - -

A        The deli worker at the Dairy Mart is light, unskilled, Your Honor.

Q        Okay.

A        And the convenience store clerk, self-employed with her husband was medium, low semi-skilled with an SVP of three.

Q        Okay.

A        The same for the Jane Lou convenience store, Your Honor, where she was an employee.

RE-EXAMINATION OF VOCATIONAL EXPERT BY ADMINISTRATIVE LAW JUDGE:

Q        I want you to assume the claimant would have the ability to do light work.  Would the claimant be able to do her past relevant work?

A        If she could do light work, Your Honor, she could do the deli worker at the Dairy Mart.

Q        Okay.  I want you to assume the claimant would have the ability to do light work but would be limited to working in extremes of heat or cold or wetness or humidity or concentration exposure to fumes, odor or dust.  Wouldn't be able to do any jobs at unprotected

heights or around dangerous machinery. Would she be able to do any her past relevant work?

A       Yes, I would again say the deli worker, Your Honor.

Q       Okay. The claimant would have the ability to do sedentary work. Would she be able to do any of her past relevant work?

A       No, Your Honor.

Q       I want you to assume a hypothetical individual the same age, education, and work experience as the claimant that would have the ability to do sedentary work but would be limited from standing or walking to 15 minutes at a time and then would have to sit down for a few minutes. But could stand or walk for two hours in an eight hour day. With that limitation, with that further limitation at sedentary and the limitations that I gave you about no hazards, unprotected heights, no working in extremes of heat or cold or wetness or humidity or fumes, concentrated fumes, odors, dust, would there be any full time unskilled jobs that such a hypothetical person could do in the local or national economy?

A       Yes, Your Honor, there would be unskilled jobs at the sedentary level that would comply with that hypothetical. Some examples I could offer would be that of a surveillance system monitor. There are 50 in the local labor market, 15,000 nation. There are sedentary cashiers, 3000 local, 550,000 nation. There are addresser - -

Q       Could you tell me what the local area is?

A       Oh, yes, Your Honor, I'm sorry. The local area I'm referring is northern West Virginia and southwestern Pennsylvania, Your Honor. In addition to the surveillance system monitors and cashiers, Your Honor, there are also addressers, 250 local, 100,000 nation. There are also entry level receptionists, 500 local, 168,000 nation. These are all sedentary jobs, Your

Honor, unskilled.

Q        All right.  I want you to assume that the claimant could do sedentary work but would be restricted, as I gave you in the first hypothetical, but the - - she could sit for up to eight hours in a workday.  Could only stand or walk or about an hour at a time and could only stand or walk for no more than 15 minutes at a time.  With that additional restriction to the sedentary would that change your answer with respect to the jobs or the job numbers that you gave me?

A        No, Your Honor.

Q        I want you to assume the claimant could do sedentary work but because of her impairments would be off task for an hour a day outside her normal breaks and lunch break.  Would she be able to do any full time unskilled work if - - on an ongoing basis?

A        If she was off task an hour a day on an ongoing basis I would say no, Your Honor.  Most - -

Q        Outside their normal breaks.

A        Outside the two 15 minute breaks and a half hour for lunch if she was off task an additional one hour, no, she could not do her work, she could not do repetitive work.

ALJ        All right.  Counsel, did you have any questions?

ATTY        No, Your Honor, not since you asked those questions.  Your Honor, we have no questions.  And would very respectively ask the court to give strong consideration that she cannot  work - - would not have been even back on '01, certainly able to stay on task because of swelling and things like that.  And truthfully, I mean actually it's the nature of her impairment and the nature of the disease in that knee that's so unique in her case and makes her eligible even though you, you know, you might not just normally think a 40 year old girl with a

bad  knee isn't - - you might think she's not disabled but she has very severe type of a arthritic condition in there that these doctors recognize.

E.      Lifestyle Evidence

The following evidence concerning Claimant's lifestyle was obtained at the hearing and through medical records.  The information is included in the report to demonstrate how Claimant's alleged impairments affect her daily life.

•      Climbs stairs at her home.  (Tr. 182).

•      Has a driver's license and is able to drive. (Tr. 187).

•      Does the grocery shopping.  (Tr. 200).

•      Does housework.  (Tr. 202, 204).

•      Sometimes attends church.  (Tr. 205).

•      Visits her mother.  (Tr. 205).

•      Can carry 25-30 pounds.  (Tr. 207).

### III.  The Motions for Summary Judgment

A.      Contentions of the Parties

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the ALJ erred: (1) by failing to properly evaluate and give appropriate weight to Claimant's treating physician's opinion; and (2) by failing to conduct a proper credibility analysis.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ (1) properly evaluted the medical opinion of record and properly declined to give Claimant's treating physician's opinion controlling weight; and

(2) conducted a proper credibility analysis.

B.     The Standards.

1.     Summary Judgment.  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2.     Judicial Review.  Only a final determination of the Commissioner may receive judicial review. See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3.     Social Security - Medically Determinable Impairment - Burden. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4.     Social Security - Medically Determinable Impairment.  The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5.     <u>Disability Prior to Expiration of Insured Status- Burden</u>.  In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status.  <u>Highland v. Apfel</u>, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); <u>Stephens v. Shalala</u>, 46 F.3d 37, 39 (8th Cir.1995)).

6.     <u>Social Security - Standard of Review</u>.  It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence.  The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary.  <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

7.     <u>Social Security - Scope of Review - Weight Given to Relevant Evidence</u>.  The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry."  <u>Milburn Colliery Co. v. Hicks</u>, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence.  <u>Gordon v. Schweiker</u>, 725 F.2d 231, 235-36 (4th Cir. 1984).

8.     <u>Social Security - Substantial Evidence - Defined</u>.  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9.     <u>Social Security - Sequential Analysis</u>.  To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her

impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

C.     Discussion

   1. FAILURE TO PROPERLY EVALUATE AND GIVE APPROPRIATE WEIGHT TO CLAIMANT'S TREATING PHYSICIAN'S OPINION.

Claimant asserts that the ALJ erred by failing to give controlling weight to the medical testimony of Claimant's treating physician, Dr. J. Patrick Galey, and to provide adequate reasons for rejecting his opinions. The Commissioner counters that the ALJ properly evaluated the medical opinions of record and properly declined to give Claimant's treating physician's opinion controlling weight.

All medical opinions are to be considered in determining the disability status of a claimants. 20 C.F.R. §§ 404.1527(b), 416.927(b). Nonetheless, opinions on ultimate issues, such as RFC and disability status under the regulations, are reserved exclusively to the ALJ. 20 C.F.R. §§ 404.1527(e)(1)-(3), 416.927(e)(1). Statements by medical sources to the effect that a claimant is "disabled" are not dispositive, but an ALJ must consider all medical findings and evidence that support such statements. Id.

The opinion of Claimant's treating physician is entitled to great weight and may only be disregarded if there is persuasive contradictory evidence. Evans v. Heckler, 734 F.2d 1012, 1015 (4th Cir. 1984). Controlling weight may be given only in appropriate circumstances to medical

13

opinions, i.e., opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources, when the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. §416.927(d)(2). See Craig, 76 F.3d at 590 (holding that a treating physician's medical opinion must be given controlling weight only when it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record).

While the credibility of the opinions of the treating physician is entitled to great weight, it will be disregarded if there is persuasive contradictory evidence. Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984). To decide whether the impairment is adequately supported by medical evidence, the Social Security Act requires that impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Heckler v. Campbell, 461 U.S. 458, 461 (1983); 20 C.F.R. §§ 404.1508; Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1. (4th Cir. 1990). Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527 (2005). Courts often accord "greater weight to the testimony of a treating physician" because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

"If the case record contains an opinion from a medical source on an issue reserved to the

Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." Social Security Ruling (SSR) 96-5p at *3. The ALJ undertook such an analysis here. It is the duty of the ALJ, not the courts, to make findings of fact and resolve conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied, not to substitute the Court's judgment for that of the Commissioner. Id. The Court's review reveals that the ALJ reasonably resolved all such conflicts and that the record more than adequately bears our his conclusions.

Claimant cites SSR 96-2p for the proposition that, in his decision, the ALJ must announce good reasons for the weight assigned to the opinion of a treating physician and that such reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p.

In this case, the ALJ summarized almost the entire medical record before him. (Tr. 16, 25) With regard to Dr. Galey's opinion, the ALJ found as follows:

> Considering the overall record, I find that it fails to support the opinions of Dr. Galey and Dr. Snead that on or before September 30, 2001, the claimant's osteoarthritis of the left knee was of a level of severity to satisfy the requirements of Section 1.02A of Appendix 1. Within the provisions of Section 1.02, as detailed above, the record establishes that the claimant had significant medial joint line arthritis with bone-on-bone contact and sclerotic changes of the bone material. She had chronic pain, but the examinations by Dr. Galey and Dr. Zervos during the period in question failed to reveal any swelling, limitation of motion, or instability. In this regard, I noted that Dr. Galey reported that the examination on February 6, 2004, revealed limitation of motion with loss of full straightening of the knee and more loss of flexion than the "last time" (Exhibit 4F). However, as detailed above, Dr. Galey reported that his last examination prior to February 6, 2004, on

November 27, 2000. revealed full range of motion. (Tr. 20).
The ALJ, then, specifically stated that he "rejected the opinion of Dr. Galey." (Tr. 22). The ALJ also observed that Dr. Galey had treated Claimant only twice during the relevant time period. (Tr. 22).

Accordingly, the ALJ properly evaluated the medical opinion evidence of Dr. Galey.

Claimant further contends that, if the ALJ "had doubts as to the basis of Dr. Galey's opinion, then the ALJ had a duty to do more than simply reject it" and was required to "recontact" Dr. Galey. Pl.'s Br. at 10.

20 C.F.R. § 404.1512(e) provides in pertinent part:

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques....

Furthermore, SSR 96-5p provides in relevant part:

Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

Although Claimant alleges that the ALJ was obligated to recontact Dr. Galey to seek clarification, the regulations only require the Commissioner to recontact a treating physician when "the evidence we receive from your treating physician...is inadequate for us to determine whether you are disabled." 20 C.F.R. § 404.1512(e). In the present case, Claimant submitted evidence from multiple treating and examining physicians. Contrary to Claimant's argument, the ALJ found Dr. Galey's assessment inconsistent with the other evidence of record, and not "inadequate." 20 C.F.R. § 404.1512(e). Moreover, the medical records in this case clearly provide an adequate basis for the Commissioner's determination that Claimant is not disabled. Therefore, because the ALJ had sufficient evidence to make a disability determination, he not required to recontact Dr. Galey.

Finally, Claimant alleges that [g]iven that there is no other evidence to support the ALJ's conclusion, his determination regarding Ms. Davis's ability to perform 'sedentary' work is clearly erroneous." Pl.'s Br. 8. Claimant cites Grimmett v. Heckler, 607 F.Supp. 502 (S.D.W.Va. 1985), for the proposition that "the ALJ's actions amount to his doctor in this case, to simply deciding his opinion is right while the treating expert is wrong." (Cl.'s Br. at 9). In this case, however, the ALJ's finding is based on the evidence and is not a substitution of his opinion. Claimant's RFC was based upon the ALJ's thorough evaluation of the relevant evidence, including the medical

record and Claimant's testimony.  (Tr. 16).  Therefore, substantial evidence supports the ALJ's findings.

### 2.  FAILURE TO CONDUCT A PROPER CREDIBILITY ANALYSIS.

Claimant asserts that the ALJ erred in determining her credibility.  Commissioner counters that the ALJ properly determining Claimant's credibility.

Unfortunately for Claimant, his argument is without merit.  "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."  Shively v. Heckler, 739 F.2d 987, 889 (4th Cir. 1984) (citing Tyler v. Weinberger, 409 F. Supp. 776 (E.D. Va. 1976)).  "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference."  See Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997).  The ALJ must apply a two-step analysis when assessing the credibility of a claimant's subjective complaints of pain.  First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged.  Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record.  Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

In this case, the ALJ correctly applied the Craig test.  The ALJ found that "the medical evidence indicates that the claimant has osteoarthritis of the left knee , an impairment that is 'severe' within the meaning of the Regulations."  (Tr. 18).   Although the ALJ found that the objective evidence "establishes that the claimant had a basis for a degree of pain and functional limitations associated with her osteoarthritis of the left knee present on or before September20,

18

2001," he noted that the evidence of record "fails to support the disabling degree alleged by the claimant." (Tr. 21). This satisfies the first prong of Craig.

The ALJ considered Claimant's subjective complaints of debilitating symptoms in light of the entire record in accordance with the second prong of Craig. The ALJ was in the best position to observe Claimant at the hearing and evaluate his credibility. Specifically, the ALJ stated that Claimant had X-ray evidence of significant medial joint line arthritis with bone-on-bone contact.
(Tr. 22). Despite the degree of arthritic change, the examinations revealed full range of motion of the knee and no instability. (Tr. 22). Dr. Galey and Dr. Zervos reported no effusion on any of the examinations during the period in question. (Tr. 22). Claimant told Dr. Galey that she managed to do the things she wanted to do despite her pain. (Tr. 22). She was never prescribed an assistive device. (Tr. 22). She refused to wear the knee brace, which was prescribed by Dr. Zervos. (Tr. 22). None of her treating physicians placed restriction on her activities (Tr. 22). Claimant also underwent only conservative management, including medication and physical therapy during the relevant time period. (Tr. 22).

The ALJ also considered Claimant's daily activities. (Tr. 22). He noted that Claimant continued to grocery shop, climb stairs at her home, care fore her personal needs, attend physical therapy and do housework during the relevant time period. (Tr. 22).

Although Claimant asserts that the ALJ improperly applied the "sit and squirm" test at the hearing, see Jenkins v. Bowen, 1987 WL 37525 (4th Cir. 1987), the Court disagrees. In this case, the ALJ properly considered all the evidence presented. In addition to his observations, the ALJ explained that he considered the objective medical evidence and Claimant's testimony. (Tr. 21).

Having considered all the evidence in accordance with the second prong of Craig, the ALJ, is in the best position to determine Claimant's credibility. Although the ALJ determined that Claimant had medically demonstrable severe impairments, the ALJ also determined that Claimant's testimony was not fully credible and inconsistent with her medical record. (Tr. 25). Therefore, the ALJ properly assessed Claimant's credibility.

## IV. Recommendation

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be DENIED and that the Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was substantially justified in his decision. Specifically, the ALJ (1) properly evaluated and gave appropriate weight to Claimant's treating physician's opinion; and (2) conducted a proper credibility analysis.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the Unites States District Court for the Norther District of West Virginia.

DATED: April 25, 2006

/s/ James E. Seibert
JAMES E.  SEIBERT
UNITED STATES MAGISTRATE JUDGE